UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMEL R. DIZER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:09 CV 369 HEA / DDN |
| ) | |
| MICHAEL BOWERSOX, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the petition of Missouri state prisoner Jamel R. Dizer for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was assigned to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b). For the reasons set forth below, the petition for a writ of habeas corpus should be denied.

**I. BACKGROUND**

On February 28, 2002, a jury in the Circuit Court of the City of St. Louis found petitioner guilty of two counts of forcible sodomy and one count of misdemeanor false imprisonment. (Doc. 11, Ex. B at 100, 103, 108.) On June 17, 2002, the circuit court sentenced petitioner to two terms of life imprisonment for the forcible sodomies and to one year imprisonment for the false imprisonment, all sentences to be served concurrently. (Id., Ex. A2 at 769-70; Ex. B at 133-34.)

On October 7, 2003, the Missouri Court of Appeals affirmed the judgment of the trial court. State of Missouri v. Dizer, 119 S.W.3d 156 (Mo. Ct. App. 2003.)

Petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15 on September 2, 2002. (Doc. 11, Ex. G at 6.) An amended motion was filed on April 25, 2005. (Id., Ex. G at 28.) The circuit court denied the motion for post-conviction relief on December 11, 2006, following a hearing held on April 6, 2006. (Id., Ex. G at 106; Ex. F1.) In a brief order the Missouri Court of Appeals

affirmed the denial of post-conviction relief. <u>Dizer v. State of Missouri</u>, 247 S.W.3d 608 (Mo. Ct. App. 2008)(per curiam).

Thereafter, petitioner filed his petition for habeas corpus relief in this court.

In its opinion affirming petitioner's convictions and sentences, the Missouri Court of Appeals described the facts that supported the verdicts of the jury:

> [Petitioner] Dizer, thirty-seven, met A.C., sixteen, outside a convenience store in January of 2001. A.C. was in a fight with several other people when Dizer appeared and told the others to leave the boy alone. Dizer pulled out what seemed to be a gun, which caused the others to flee. Dizer went with him to A.C.'s friend's house where A.C. and his mother had been staying. When they arrived, A.C. and his mother were told they could not stay there any longer, and Dizer offered to let them stay at his house. Dizer, A.C. and his mother then went to Dizer's friend's home where they played cards; Dizer and A.C. smoked marijuana outside of the house. At about 2:00 a.m., they left and went to Dizer's home. A.C. and his mother slept in the basement, and Dizer went upstairs. In the morning, A.C.'s mother left the house, and A.C. continued to sleep on a mattress on the basement floor. He awoke to find Dizer lying next to him on the mattress. When A.C. started to get up, Dizer told him he wanted to have sex with him. A.C. told Dizer "it wasn't going to happen," and Dizer started to choke him saying he would get it one way or the other. Dizer turned A.C. over onto his stomach, held him down flat on the mattress and sodomized him. After Dizer ejaculated, he wiped himself and A.C. off and went upstairs. A.C. blacked out; when he awoke, he could not find a way out of the basement. Ultimately, Dizer let him go. Dizer made A.C. promise not to tell anybody what happened.
>
> A.C. went back to the convenience store, found his mother and told her what happened. The police were called, and, while A.C. was explaining to the police what had happened, a young woman at the store mentioned that her brother, D.E., had been sodomized by Dizer also.
>
> In the fall of 1994, when he was fifteen, D.E. met Dizer while hanging out with some friends at a park. He ran into Dizer a few other times in the neighborhood. Late one night, he found Dizer in the alleyway behind his house. Dizer asked D.E. if he wanted to make money. D.E. thought he meant selling drugs, which was not an unexpected question in his neighborhood, and told Dizer no. Dizer said he would not ask again. The next time D.E. saw Dizer was when he and his friends went to Dizer's house one night. D.E. had not been to Dizer's home before. Dizer had started living there, with

other relatives, after getting out of prison in May of 1994. Everyone was on the second floor watching television and playing cards; some people were drinking alcohol and smoking marijuana, but D.E. had only half of a beer. At around midnight, everyone else left; D.E. stayed to avoid violating curfew. Dizer told D.E. that he wanted to have sex with him, and D.E. told him no. When D.E. tried to go for the door, Dizer got in front of him and told him that even if he made it past him, he would shoot D.E. in the back of the head. Dizer then pinned D.E. to the ground and put his fingers around D.E.'s throat. Dizer told D.E. what he was going to do to him and threatened to kill him and his parents if he told anybody. Dizer then dragged D.E. into a bedroom, and with D.E. face-down on the bed, Dizer sodomized him. Afterwards, Dizer told D.E. that no one would believe him if he told anyone about this and that Dizer would deny it if asked. D.E. slept at Dizer's and left the next morning. D.E. did not tell anyone about the incident right away because he believed Dizer--that no one would believe him and that Dizer would come find him. He was scared and felt uncomfortable talking to somebody else about it.

      A couple of days after the incident involving A.C., both victims identified Dizer during separate viewings of a live lineup at the police station. A.C. had also previously identified Dizer at the hospital the day of the incident from a stack of photographs the police gave him. Both victims also identified Dizer during trial.

119 S.W.3d at 159-60.

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner Jamel R. Dizer alleges the following grounds for federal habeas corpus relief:

(1) Petitioner's trial counsel rendered constitutionally ineffective assistance, because

    (a) he failed to call petitioner's brother, Nathaniel Dizer, as a trial witness;

    (b) he failed to call Dr. Jason Lee as a trial witness;

    (c) he failed to call the mother of one of the victims as a trial witness; and

    (d) he failed to impeach the testimony of victim D.E. about his familiarity with the interior of petitioner's residence, and he failed to bring to the court's attention a towel which

> petitioner alleges was identified by a victim as being used in one of the incidents but which was tested and found not to have petitioner's semen and DNA on it.

(2) A lineup identification procedure, which included petitioner, was conducted without petitioner's attorney present and included "discrepancies" or "problems."

(3) Photographs taken of the crime scene were not shown to the jury.[1]

(Doc. 1 at 5-11.)

Respondent argues that petitioner's claims are both procedurally barred and without merit. (Doc. 10 at 8.)

### III. EXHAUSTION OF REMEDIES AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state court remedies for the grounds they allege in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limited opportunities in Missouri courts for raising issues on direct appeal[2] and in motions for post-conviction relief,[3] no proper procedure for litigating his federal habeas grounds is now available to petitioner. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011).

However, exhaustion in the sense that petitioner has no remaining procedure for presenting a ground to a state court does not satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground, in its factual circumstances and with its legal basis, to the state trial and appellate

---

[1]This ground is stated as part of petitioner's Ground Two. (Doc. 1 at 8.)

[2]A convicted defendant has 10 days to file an appeal after the judgment or order appealed from becomes final. Mo. S. Ct. R. 30.01(d).

[3]A Missouri state prisoner has 90 days to file a motion for post-conviction relief after the date the mandate of the appellate court is issued affirming the judgment or sentence. Mo. S. Ct. R. 29.15(b).

courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc) . If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, his ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d at 584; King v. Kemna, supra.

Federal Grounds 1(a) and 1(b) were asserted in petitioner's amended Rule 29.15 motion. (Doc. 11, Ex. G at 34-35.) The circuit court denied relief on these grounds. (Id. at 104-05.) However, the denial of relief was not raised on appeal. (Id., Ex. H at 15; Ex. J.) Therefore, these grounds are procedurally barred from consideration by this court.

Federal Grounds 1(c) and 1(d) were not asserted in petitioner's original Rule 29.15 motion nor in the amended motion for post-conviction relief. (Id., Ex. G at 5-12, 28-39.) And they were not argued on appeal. (Id., Exs. C, H.) Because no Missouri state court considered them, they are procedurally barred from consideration by this court.

The lack of counsel component of federal Ground 2 was presented to the circuit court during trial. (Id. Ex. A1 at 34, 51-74.) The trial judge overruled the objection. (Id., at 102, 112.) Petitioner included Ground 2 in his motion for a new trial. (Id.,Ex. B at 124-25.) Petitioner brought to the attention of the Missouri Court of Appeals that he had asserted a right to counsel at the preindictment lineup identification, that he presented the issue to the trial judge, and that the trial court overruled his objection. However, his gestural assertion of his right to counsel at the lineup was argued to the Court of Appeals as a component of his argument that the lineup procedure was thereby unconstitutionally suggestive. (Id.,Ex. C at 7-8, 20.) On direct appeal, the Missouri Court of Appeals overruled the argued suggestive nature of the identification procedure. State of Missouri v. Dizer, 119 S.W.3d 156, 162-63 (Mo. App. E.D. 2003). Therefore, Ground 2 is not procedurally barred from consideration on its merits.

Ground 3 was never presented to any Missouri state court, circuit or appellate, and it is procedurally barred from consideration here.

Nevertheless, a petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice

resulting from it, or if he can demonstrate that failure to review the ground would result in a fundamental miscarriage of justice. Maples v. Thomas, --- S.Ct. ---, 2012 WL 125438, at *9 (2012); Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Maples v. Thomas, at *10; Coleman at 750-52.

To establish actual prejudice, the petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland.").

To demonstrate that the failure to review his grounds for relief would result in a fundamental miscarriage of justice, the petitioner may show that he was actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96 (1986). A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. Schlup v. Delo, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a federal habeas court to reach the merits of a procedurally defaulted claim. Id. at 316. The requirement set forth in Schlup means that an habeas petitioner must

> come forward not only with new reliable evidence which was not presented at trial, but [] come forward with new reliable evidence which was not available at trial through the exercise of due diligence.

Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011).

Petitioner has not alleged that any external factor prevented him from raising any federal ground for relief in the appropriate forum. (Doc. 1 at 5-13.) Nor has he asserted his actual innocence or demonstrated that failure to review his claims would represent a "fundamental miscarriage of justice." Schlup, 513 U.S. at 324.

Petitioner has properly exhausted his state court remedies only as to federal habeas Ground 2 and he is procedurally barred from raising the other grounds in this federal habeas action. Nevertheless, Congress has authorized this court to consider barred grounds for relief on their merits, if the court concludes that the grounds are without merit. 28 U.S.C. § 2254(b)(2). As stated above, respondent asserts that none of petitioner's federal grounds for relief have merit.

## IV. STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a ground that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1)-(2).

A state court's decision is "contrary to clearly" established law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) (plurality opinion). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The standard for habeas review articulated by AEDPA applies only to those claims which were adjudicated on the merits by a state court. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) (stating that the AEDPA standard governs petitions for habeas corpus "which were adjudicated on the merits in state court proceedings.").

Petitioner's Federal Ground 1(a) was presented to the circuit court in his amended motion for post-conviction relief under Missouri Rule 29.15 as Ground (f). (Doc. 11, Ex. G at 35.) The circuit court denied this ground on its merits. (Id. at 105-06.) The denial of this ground was not appealed. Federal Ground (1)(b) was presented to the Missouri circuit court as Rule 29.15 motion Ground (d). (Id. at 34.) The ground was denied on its merits by the circuit court. (Id. at 104-05.) The denial of relief was not appealed. Thus, Missouri courts ruled the merits of petitioner's federal Grounds 1(a), 1(b), and 2.

None of petitioner's other federal habeas grounds were presented to the Missouri courts at any level. The pre-AEDPA standard for habeas review governs grounds that were not adjudicated on the merits by a state court. Robinson, 278 F.3d at 865 ("Because this claim apparently was not adjudicated by the Minnesota court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial, or that the verdict likely would have been different absent the now-challenged [defect]." Id. at 866 (internal citations omitted).

## **V. DISCUSSION**

### Ineffective assistance of counsel

Ground 1 alleges specifications that petitioner's trial counsel rendered constitutionally ineffective assistance. The right to effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments. Strickland v. Washington, 466 U.S. 668, 684-85 (1984). A two-part test determines this ground: First, counsel must have been professionally deficient and, second, the deficiency must have prejudiced the defense. Id. at 687.

Petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. This requires a showing that counsel committed errors so serious that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, to satisfy the prejudice requirement, the petitioner must demonstrate that there was "a reasonable probability that . . . the

result of the proceeding would have been different if counsel had performed adequately." Washington v. Moore, 421 F.3d 660, 661-662 (8th Cir. 2005)(citation omitted).

Under Strickland, the petitioner must overcome a strong presumption that counsel rendered appropriate assistance. Marcrum v. Luebbers, 509 F.3d 489, 502 (8th Cir. 2007), cert denied, 129 S. Ct. 754 (2008). In considering the merits of a constitutionally ineffective assistance of counsel claim, a reviewing court must be "highly deferential" in determining whether the course of conduct selected by counsel could be considered a sound trial strategy rather than an error. Id. The burden is on the petitioner to show unreasonable representation by counsel and that a challenged action was not sound trial strategy. Id.

**Ground 1(a)**

In Ground 1(a), the petitioner contends counsel rendered ineffective assistance by failing to call petitioner's brother, Nathaniel Dizer, as a witness. Petitioner claims that, had Nathaniel Dizer been called as a defense witness, he would have testified that he never worked a "graveyard" shift, which would include hours from 11:00 p.m. until midnight, and that he was regularly at home during these hours, including the night of the events leading to petitioner's convictions. (Doc. 1 at 9.)

In the evidentiary hearing held on this ground, Nathaniel Dizer testified as follows:

> During the fall of 1994 and the early months of 1995, and in 2000, he lived at 4245 Hartford with his brothers James and Jamel and with their parents. This is a two-bedroom residence. During that period he never saw Jamel there with young boys. He never saw Jamel have card games there, because their parents would not have allowed it. Also, all of Jamel's "associates" were younger than he; they appeared to be in their 20s, not their teens. Also, he was never called to testify for Jamel at trial, although he was available. He worked the second shift and, so, was at home in the morning hours, then went to work, and returned home between 10:30 p.m. and midnight. (Doc. 11, Ex. F1 at 5-11.)

- 9 -

Petitioner Dizer also testified in the post-conviction hearing to the following:

> Before trial he met with his trial counsel on "[s]everal occasions, four, five, six, you know." They discussed whom they wanted to call as witnesses. Dizer did not want to call his parents, because of their age. Dizer contacted his brother and counsel said he would get an expert to testify. Dizer suggested Dr. Lee, who had tested one of the victims. Throughout the trial proceedings, Dizer maintained his innocense. However, his position was that he was not guilty because what had happened was "three-way sex."[4] His trial counsel argued to the jury that Dizer did not commit forcible sodomy on victim A.C. Even though Dizer's seminal fluid was found in A.C.'s rectum, there was incest between A.C. and his mother and "[w]e all had sex in the same bed area, right there in one bed, the three of us," Dizer denied ejaculating into A.C.'s rectum. (Id. at 20-28.)

The Missouri circuit court denied relief on this ground. In doing so, it analyzed the reasonableness of counsel's trial strategy. It found that "[t]he mere fact that movant's brother did not see movant having card parties with neighborhood youths during 1994 and 1995 would not establish that such a party did not occur on a particular date." (Id., Ex. G at 105-06.) The court further stated that "Nathaniel Dizer's proposed testimony was inconsistent with statements [petitioner] made to his attorney prior to trial, and [Nathaniel] Dizer worked full time during the relevant time periods and was often not present during the evening." (Id. at 106.) Even if defense counsel had called Nathaniel Dizer as a witness, the outcome of the trial likely would have been the same. Thus, petitioner's Ground 1(a) fails the prejudice requirement of the Strickland standard.

The state court's analysis led to a result which was neither contrary to established law, nor based on an unreasonable determination

---

[4]Petitioner testified at trial before the jury at length explicitly about the "three-way" sexual encounter that occurred between him, A.C., and A.C.'s mother. (Doc. 11, Ex. A2, at 618-21, 654-59.)

of the facts in light of the evidence presented in the state court proceeding. Ground 1(a) is without merit.

**Ground 1(b)**

In Ground 1(b), petitioner faults his trial counsel for failing to call Dr. Jason Lee as a witness. Petitioner contends that Dr. Lee, if called as a witness, would have testified at trial that there was no rectal penetration. The circuit court denied this ground, finding from the trial record that Dr. Lee's notation stating there was no rectal penetration had been crossed out and that Dr. Monteleone's trial testimony contradicted Dr. Lee's proposed testimony. The circuit court stated:

> The Court finds this claim is without merit because the State's expert, Dr. James Monteleone, testified that "the great majority of children who have been anally penetrated, anally or vaginally for females, do not have any physical findings." (Tr. 520) Dr. Monteleone further testified that there was no evidence of tearing or bleeding and that, given the elastic nature of the rectum, it would not be unreasonable for there not to be any damage. The Court does not believe that the introduction of [Dr. Lee's] records, with the notation crossed out, and arguing an inference from the records, could have changed the outcome of the trial in light of Dr. Monteleone's testimony.

(Id. at 104-05.) Dr. Monteleone's trial testimony was in fact not inconsistent with Dr. Lee's notation, in the sense that rectal tears or bleeding need not be present following forcible rectal penetration. (Id., Ex. A2 at 520.) Had Dr. Lee testified, the outcome of the trial would not likely have been different. Therefore, petitioner's Strickland claim failed at least on the prejudice prong of the two-part test.

The state court's analysis led to a result which was neither contrary to established law, nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Ground 1(b) is without merit.

**Ground 1(c)**

In Ground 1(c), petitioner contends counsel rendered ineffective assistance by failing to call the mother of one of the victims as a

defense witness at trial.  Petitioner does not state in his petition which mother he is talking about[5] and what testimony would have been offered by her, but merely states that he attempted to have her called as a witness, and had his reasons.  This ground is presented for the first time to any court by being included in the present habeas petition.

This ground meets neither prong of the <u>Strickland</u> test.  Petitioner would first have to show his attorney's actions fell below an objective standard of reasonableness, subject to a strong presumption that counsel rendered appropriate assistance.  <u>Marcrum</u>, 509 F.3d at 502.  To rebut this presumption, petitioner must show counsel's actions were the product of inattention or neglect, and not reasoned judgment.  <u>Id.</u>  It is well established that witness selection is usually left to counsel's judgment, and will not be lightly second-guessed in hindsight.

Though petitioner does not state in his petition what the witness' testimony would have entailed, it is clear from the trial transcript that there was a belief held by all parties that the testimony would have been cumulative or corroborative to the testimony provided by the victim.  (Doc. 11, Ex. A2 at 639-42.)  In denying petitioner's request to argue an adverse inference to the jury that the prosecutor did not call this witness to testify, the trial court judge referenced a sworn deposition given by this witness, and held that the testimony would have been either corroborative or cumulative to testimony given by the victim, and thus, harmful to petitioner.  (<u>Id.</u> at 641-42.)  It was not objectively unreasonable trial strategy for petitioner's counsel to refrain from calling this witness, given the likelihood of eliciting testimony damaging to petitioner.

Furthermore, petitioner cannot prove prejudice resulting from the failure to call this witness.  In <u>Freeman v. Graves</u>, the Eighth Circuit considered a similar situation, but where trial counsel did not call witnesses who presumably would have testified to the benefit of the defendant.  <u>Freeman v. Graves</u>, 317 F.3d 898, 901 (8th Cir. 2003).  The court held that the petitioner failed to demonstrate prejudice under the

---

[5]One might surmise from the record and his petition that he is speaking about A.C.'s mother, because he alleges she was one who "actually was part of this."  (Doc. 1 at 6.)

Strickland test because petitioner's attorney "otherwise gave . . . a vigorous defense," which included engaging in "strategy discussions, pretrial motions, . . . depositions, jury selection, cross-examination, and presentation of [the petitioner's] testimony in his defense." Id. The court further held "the lack of . . . witnesses was not so critical that it negated everything else counsel did." Id.

In petitioner Dizer's case, defense counsel provided a vigorous defense. Counsel was involved with depositions, selection of the jury, and presentation of the petitioner's case through direct and cross-examination of witnesses. Furthermore, any weight given to the failure of defense counsel to call witnesses is dramatically lessened in the present case due to the high likelihood of eliciting testimony which would have harmed petitioner. Petitioner has not shown there was a reasonable probability that the result of the trial would have been different if counsel had called this witness to testify.

Petitioner has failed to demonstrate deficient attorney performance or prejudice resulting therefrom. Ground 1(c) lacks merit.

**Ground 1(d)**

In Ground 1(d), petitioner faults his trial counsel for not investigating discrepancies regarding one victim's knowledge of the interior of petitioner's home, and for not introducing into evidence a towel which did not contain petitioner's DNA. This ground was not asserted in any previous court proceeding.

Petitioner fails to meet either prong of the Strickland test. First, petitioner cannot show his counsel fell below an objective level of reasonableness. Counsel's testimony at petitioner's post-conviction hearing reveals a pre-trial strategy centering on the victim's familiarity with both petitioner and petitioner's home. (Doc. 11, Ex. F2 at 8-12.) Counsel testified petitioner was set to testify that petitioner had thrown parties for kids, including the victim, in the past. (Id. at 10.) It was planned that petitioner would truthfully testify specifically that the victim had been in petitioner's house prior to the night in question. (Id.)

Given such a trial strategy, it was reasonable for counsel to believe the victim was knowledgeable about the interior of petitioner's home, and it was reasonable trial strategy to avoid a line of questioning probing such knowledge. Furthermore, counsel provided a vigorous defense in his cross-examination of the victim, questioning the victim's recollection of the night in question, the victim's ability to leave petitioner's house at several points, and the victim's late disclosure of the events. (Id. Ex. A2 at 550-77.) It was reasonable trial strategy to press these points rather than probing the victim's knowledge of the interior of petitioner's home, especially in light of the pre-trial strategy which indicated the victim was in fact knowledgeable about the interior of the home.

Likewise, petitioner cannot show counsel's performance was deficient in that it fell below an objective standard of reasonableness through a failure to introduce a towel into evidence which contained none of petitioner's DNA. In considering the merits of an ineffective assistance of counsel claim, a court must be "highly deferential" in determining whether the course of conduct selected by counsel could be considered a sound trial strategy rather than an error. Marcrum, 509 F.3d at 502.

Petitioner contends a towel was identified by the victim as one used during the commission of the crime, and that towel was devoid of any of petitioner's semen and DNA. No towel was introduced into evidence at trial by either party. As no towel was ever produced by the prosecution to prove or intimate guilt, it is not unreasonable for counsel to fail to introduce it to show a lack of guilt. Petitioner cannot show that counsel's failure to emphasize the lack of petitioner's DNA on a towel which was theretofore unmentioned at the trial constitutes a deficiency sufficient to overcome the strong presumption of effective assistance of counsel. This is especially true when the trial record included evidence that petitioner's seminal fluid and DNA were found on the back of A.C.'s undershorts. (Doc. 11 Ex. A2 at 452-55.)

Petitioner additionally fails to show prejudice resulting from counsel's selected trial strategy. There has been no showing that production of the towel or a showing of victim's lack of knowledge of the

interior of petitioner's home would reasonably have led to a different outcome.

Accordingly, Ground 1(d) is without merit.

**Ground 2**

In Ground 2, petitioner contends his Sixth Amendment right to counsel was violated when he was not allowed to have his attorney present during a lineup. Petitioner argues he requested the presence of an attorney during the lineup and that his actions in doing so rendered the lineup unconstitutionally suggestive.

On January 20, 2001, petitioner was taken into custody, and brought to police headquarters. (Doc. 11, Ex. A1 at 37; Ex. B at 40.) Both victims and the mother of one victim were also brought to the same police headquarters. (Id., Ex. A1 at 37, 42.) Petitioner was placed in a physical lineup with four other individuals. (Id. at 39.) Both the victims and the mother positively identified petitioner. (Id. at 40-43.) Petitioner did not have an attorney present at this lineup. (Id. at 34-70.) Nearly nine months later, on October 18, 2001, petitioner was indicted on seven counts related to the positive identification, and to the crimes for which he was later convicted. (Id., Ex. B at 9-11.)

Petitioner moved before trial to suppress the lineup identification. The Missouri Court of Appeals reviewed the denial of suppression relief thus:

> Before trial, Dizer moved to suppress the victims' identification of him at the live lineup. At the motion hearing, the officer who conducted the lineup testified that when she asked Dizer if he would participate in the lineup, she told him he had the right to have an attorney present. She testified that Dizer did not say anything about an attorney and agreed to be in the lineup. The officer described Dizer's behavior during the lineup as "fine": he did not raise or swing his arms around, say "he, it's me," or otherwise try to disturb the lineup. Dizer testified at the motion hearing that when he was called to approach the glass and turn around during the lineup, he was upset and disappointed because he believed he had the right to an attorney and had been denied his request for one. He felt his rights were being violated, so he threw his hands up on the glass "indicating my rights was being on the side, you know (indicating) it's me." The motion was denied.

State of Missouri v. Dizer, 119 S.W.3d at 162-63.

Petitioner also argued during the trial that the identifications should be suppressed on several grounds, including the violation of his right to counsel at the lineup. (Doc. 11, Ex. A1 at 72-74.) Through the course of the hearing, the trial judge asserted there was no right to counsel at a preindictment lineup. (Id. at 55.) And for this reason, she denied the motion to suppress the preindictment lineup identifications. (Id. at 112.)

On direct appeal, petitioner argued that the facts surrounding the lineup created an impermissibly suggestive identification, but did not specifically argue that a right to counsel existed, or was created by the facts of the situation. (Id., Ex. C at 20.) The Missouri Court of Appeals ruled:

> The trial court was free to disbelieve Dizer's claim that he had behaved suggestively in the lineup. Disregarding that testimony, there is nothing to show that the pretrial identification procedure was unnecessarily suggestive.
>
> Even if Dizer's account is true, he admits that there is nothing in the record to show who was viewing the lineup at the time of his suggestive behavior. Thus, whether inadvertent or intentional, Dizer cannot demonstrate which victim's identification is rendered unreliable by the unduly suggestive lineup procedures. "The linchpin of due process in identification procedures is reliability, not suggestiveness." . . . For that matter, even if Dizer's suggestive behavior were inadvertent and occurred during both victims' viewing, the totality of the circumstances demonstrates that both victims' identifications were still reliable. Both had clear and lengthy opportunities to view Dizer before, during and immediately after the crimes; there is nothing to suggest that either of them wee inattentive during the commission of these crimes or that either of them were at all uncertain about any of their identifications, including at trial; A.C.'s lineup identification was made just two days after the crime; and A.C. had also previously accurately identified Dizer on the day of the crime. . . . A.C.'s identification is clearly reliable. The only factor weighing against the reliability of D.E.'s identification is that it occurred several years after the crime. This alone is not sufficient to demonstrate unreliability, however, in light of the other factors.
>
> The trial court did not abuse its discretion in admitting these identifications.

State of Missouri v. Dizer, 119 S.W.3d at 163.

Under the Due Process Clause, identification evidence must be suppressed if it results from procedures that are unnecessarily suggestive and that may lead to an irreparably mistaken identification. Stovall v. Denno, 388 U.S. 293, 301-02 (1967). Such an identification, however, may be admissible if it is nonetheless reliable. Neil v. Biggers, 409 U.S. 188, 198-99 (1972). Reliability depends upon (1) the witness' opportunity to view the suspect at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) the accuracy of the witness' description of the suspect prior to the identification; (4) the witness' level of certainty at the time of the identification; and (5) the length of time between the crime and the identification. Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977). Clearly, these are the standards the Missouri court applied to petitioner's motion to suppress the pretrial lineup identification of him.

Even on the issue of petitioner's entitlement to counsel at the lineup, federal constitutional law is against him. In a series of cases dating back to Powell v. Alabama, 287 U.S. 45 (1932), "it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 688 (1972). The Kirby court enumerated several instances which indicate the initiation of adversary judicial proceedings, including trial, arraignment, preliminary hearings, formal charge, information, and indictment. Id. at 688-89. The right to counsel guaranteed by the Sixth and Fourteenth Amendments does not attach to a defendant in a criminal matter prior to the initiation of adversary judicial proceedings. Rowe v. Lockhart, 736 F.2d 457, 459 (8th Cir. 1984). "A preindictment lineup . . . is not a 'critical stage' in a criminal prosecution." Id. Consequently, the Sixth Amendment right to counsel does not attach to preindictment lineups.

Petitioner fails to show that the trial judge's denial of the motion to suppress the preindictment lineup identifications and the decision of the Missouri Court of Appeals to affirm were either contrary to, or

involved an unreasonable application of clearly established federal law.

Ground 2 is without merit.

**Ground 3**

In Ground 3, petitioner alleges generally that photographs taken of the crime scene were not shown to the jury. This allegation is so general that it does not allege how in any way, even if true, this fact amounted to a violation of federal constitutional law. Thus, petitioner fails to allege a cognizable ground for federal habeas corpus relief in this court. See 28 U.S.C. § 2254(a).

For the reasons stated above,

**IT IS HEREBY RECOMMENDED** that the petition of Jamel Dizer for a writ of habeas corpus be denied.

The parties are advised they have until February 7, 2012, to file written objections to this Report and Recommendation. The failure to file timely, written objections may waive the right to appeal issues of fact.

/s/     David D. Noce     
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 20, 2012.